**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
LEONARD BECKETT,

                        Plaintiff,

                 - against -

THE INCORPORATED VILLAGE OF FREEPORT,
THE INCORPORATED VILLAGE OF FREEPORT
POLICE DEPARTMENT, POLICE OFFICER
TIMOTHY P. SEAMAN, The Incorporated Village
of Freeport, POLICE OFFICER WILLIAM
LUIKART, The Incorporated Village of Freeport
POLICE DETECTIVE EDWARD S. MARTIN, III,
The Incorporated Village of Freeport, POLICE
OFFICER JOHN DOE, The Incorporated Village
of Freeport, Individually and in their capacities as
Village of Freeport Police Officers, POLICE
OFFICER DIANE PERESS, The Incorporated
Village of Freeport, POLICE OFFICER
DONETTA CUMBERBATCH, The Incorporated
Village of Freeport, NASSAU COUNTY,
NASSAU COUNTY POLICE DEPARTMENT,
DONALD MEESE, Nassau County Detective,
DIANE PERESS, Nassau County Police Officer,
JOHN DOE, Nassau County Police Officer,
Individually and in Their Capacities as Nassau
County Police Officers,

                      Defendants.
-----------------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

CV 11-2163 (LDW) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      Plaintiff Leonard Beckett ("Plaintiff" or "Beckett") brought this civil rights action

claiming that his constitutional rights were violated by the Defendants in connection with their

arresting him on February 6, 2010. Specifically, Plaintiff asserts that he was walking along the

street in Freeport, New York at approximately 7:50 p.m. on February 6, 2010 when an individual

slowed down his vehicle in the street and then exited the vehicle and pursued the Plaintiff.

Second Amended Complaint ("SAC") ¶¶ 28-29 [DE 34]. Plaintiff maintains that he was wrongfully pursued on foot by several individuals, was unreasonably seized and detained, and was assaulted and battered. SAC ¶¶ 33-34.

Before the Court is Plaintiff Beckett's motion to amend the Complaint for a third time to include facts which he states occurred after the filing of the SAC and which stem from his recent acquittal on burglary and petit larceny charges. This motion is brought pursuant to Federal Rules of Civil Procedure 15(a), 15(d) and 21. DE 54. In particular, Plaintiff's counsel points out that shortly after filing the SAC on February 8, 2013, Plaintiff went on trial for a 2007 burglary which took place at 11 Weberfield Avenue in the Village of Freeport. Plaintiff was acquitted of all charges arising from the burglary on June 17, 2013. On August 23, 2013, Plaintiff moved to amend to supplement his pleading to include these "transactions, occurrences, and events" which post-date the SAC. Plaintiff purportedly does not seek to add any new causes of action.

Nassau County, the Nassau County Police Department, and Detective Donald Meese (collectively, the "County Defendants") oppose Plaintiff's third motion to amend, contending that Plaintiff's acquittal on the burglary charges has no connection to the instant action. The Nassau County Defendants maintain that the motion should be denied by the Court as a futility.

The Village of Freeport and the Freeport Police Department (collectively, the "Village Defendants") and the individual Freeport Police Officer defendants are represented by separate counsel. The Village Defendants have also filed opposition to Plaintiff's motion, arguing that there is no basis to amend to add these new factual allegations. Finally, individual Freeport Police Officers Timothy P. Seaman, William Luikart, Thomas D. Seaman, Donetta Cumberbatch, and Detective Edward S. Martin (the "Freeport Police Officer Defendants") also oppose the motion for leave to amend, proffering that Plaintiff's effort to insert new facts

constitutes a misguided attempt to restart the discovery process for his eventual assertion of a malicious prosecution claim concerning the 2007 burglary.

For the reasons that follow, Plaintiff's motion for leave to file a Third Amended Complaint is DENIED.

## I.  BACKGROUND

### A.  The Allegations

Plaintiff filed his original Complaint on May 4, 2011.  DE 1.  Before Defendants answered, Plaintiff filed an Amended Complaint on August 20, 2011.  DE 2.  In an Order dated January 25, 2013, this Court granted, in part, and denied, in part, Plaintiff's motion to file a SAC. DE 33.  Pertinent to the matter presently before the Court, Plaintiff in that motion sought leave to add a malicious prosecution claim for the 2007 Weberfield Burglary.  *Id*. at 46.  However, the Court found that the claim was not ripe at that time, holding that:

> It is axiomatic that…a claim for malicious prosecution does not arise until the underlying charges are dismissed in the plaintiff's favor.   According to the [Proposed SAC], Plaintiff remains incarcerated on the Weberfield Burglary charges.  Consequently, a malicious prosecution claim in connection with the Weberfield Burglary charges cannot stand and Plaintiff is DENIED leave to amend to add a malicious prosecution claim at this time.

*Id*. (internal citations omitted).  In accordance with the directives set forth in the Court's January 25, 2013 Order, Plaintiff filed the SAC on February 8, 2013.  *See generally* SAC.

The SAC alleges that on February 6, 2010, Police Officer Timothy Seaman ("Officer Seaman") received a radio report of a robbery at a liquor store in the Village of Freeport (the "Liquor Store Robbery").  SAC ¶¶ 20-23.  The alleged perpetrator was described as a black male wearing a black jacket.  *Id*. ¶ 24.  Police Officer Seaman, who was in plain clothes and driving an unmarked vehicle, observed Plaintiff Beckett wearing a red and white jacket over a black jacket.

*Id*. ¶¶ 22, 27. Officer Seamen alleged that as he slowed down his vehicle, Beckett began to run southbound. *Id*. ¶ 28. After getting out of the car, Officer Seaman pursued Beckett on foot. *Id*. ¶ 29. Beckett asserts that Seaman did not identify himself as a police officer. *Id*. After a chase, Beckett was apprehended by Officer Seaman with the assistance of other Freeport Police Officers and was arrested. *Id*. ¶ 32.

At the Village police station, Plaintiff found himself, "bruised, battered, bleeding from the mouth, and drifting in and out of consciousness." SAC ¶ 64. Plaintiff "spat his blood into a cup" and the cup was then "recovered by defendant Nassau County Police Detective Donald Meese and held as evidence along with Beckett's clothing." *Id*. ¶ 39. Detective Meese then forwarded the evidence to the Nassau County Medical Examiner's Office for DNA analysis. *Id*.

Plaintiff has set forth numerous claims arising out of his arrest in connection with the Liquor Store Robbery. The civil rights claims under 42 U.S.C. § 1983 are based on Defendants' alleged unlawful search and seizure, unreasonable detention, assault, battery, use of excessive force, brutality, and unlawful punishment, all in violation of Plaintiff's rights protected under the Fourth and Fourteenth Amendments to the Constitution. Plaintiff also sets forth state law causes of action, including violations of the New York State Constitution, false arrest, false imprisonment, assault, and battery.

Beckett was incarcerated after having been convicted upon a plea of guilty to the Liquor Store Robbery. SAC ¶ 46. He was sentenced to five years in prison and five years post-release supervision. *Id*. On October 8, 2011, however, the New York State Supreme Court, Appellate Division, Second Department ("Second Department") reversed Beckett's conviction on the grounds that the Freeport police had unlawfully pursued and seized Plaintiff, rendering all evidence against him "fruit of the poisonous tree." *Id*. ¶ 49. In reaching that decision, the

Appellate Division held that "the pursuit of the defendant and his seizure were unlawful" and "[c]onsequently, the physical evidence, identification testimony, and the defendant's statement to law enforcement officials should have been suppressed as 'fruit of the poisonous tree.'" *People v. Beckett,* 88 A.D.3d 898, 899-900, 931 N.Y.S.2d 126 (2d Dep't 2011) (internal citations omitted).

On November 18, 2011, the Liquor Store Robbery charges against Plaintiff were dismissed. SAC ¶ 51. However, while Plaintiff was in custody at the Village Police Department, "[d]efendants collected the blood that Beckett expelled from his mouth and subjected it to DNA analysis by the New York State police." *Id. ¶* 52. The blood taken from Plaintiff was "allegedly found to match DNA that was recovered on February 14, 2007 from 11 Weberfield Avenue in the defendant Village, the scene of an alleged burglary. ¶ 53. In light of this evidence, Plaintiff alleges, Nassau County Police Detective Michelle A. Clifford filed a felony complaint against the Plaintiff. SAC ¶ 54.

On June 20, 2011, a grand jury sitting in Nassau County "handed down a sealed indictment that charged Beckett with one count of burglary in the second degree in violation of New York State Penal Law § 140.25(2) and one count of petit larceny in violation of New York State Penal Law § 155.25." SAC ¶ 55. Plaintiff's bail was originally set at $100,000 in cash by a Nassau County court. *Id.* ¶ 56. However, since Plaintiff "lacked the means to post bail in the said amount," he remained incarcerated in the Nassau County Correctional Facility until bail was reduced to $5,000 cash in July of 2012. *Id.* After posting bail, Plaintiff was released from custody July 14, 2012 following nineteen months of incarceration. *Id.*

**B.     Acquittal of Weberfield Burglary Charges**

On June 17, 2013, a Nassau County jury acquitted the Plaintiff on the burglary and petit larceny charges from the 2007 Weberfield Burglary.  DE 50 at 1.  Two days later, on June 19, 2013, Plaintiff's counsel filed a letter notifying the Court of the acquittal and requesting leave to amend a third time, explaining that

> [t]he reason for this request is that all New York state court criminal proceedings against Mr. Beckett have finally terminated. On June 17, 2013, a jury acquitted Mr. Beckett of all of the charges pending against him pursuant to Nassau County Court Indictment No. 376-12.
>
> As a result of the acquittal, Mr. Beckett wants to amend his complaint in this action to allege that the unlawful and malicious acts and/or omissions of the defendants resulted in the said state court prosecution.  In response to Mr. Beckett's prior motion to amend his complaint to include the claims arising from the aforementioned state court prosecution, Your Honor ruled that these claims were not ripe for adjudication.
>
> It is respectfully submitted that, with the termination of the state court proceeding in favor of Mr. Beckett, these claims are now ripe for adjudication. Therefore, Mr. Beckett would like to include those claims in this action and litigate all of his claims against the defendants in this action.

*Id*. at 1-2.  Plaintiff's counsel also argues that she has put the Court and all defendants on notice that the state criminal proceedings would have a bearing on the instant civil action throughout the pendency of the instant federal civil rights action.  *Id*. at. 2.  Counsel stated that she has, moreover, requested the Court to "delay the prosecution of this action to await the outcome of the criminal proceeding" at multiple points during the pendency of this litigation, most recently on May 10, 2013.  *Id*.

On July 18, 2013, the parties participated in a Telephone Status Conference before this Court.  *See* DE 53.  The Court addressed Plaintiff's request for leave to amend the SAC, which

the Court noted, is uniformly opposed by the Defendants. *Id*. ¶ 1. The Court ultimately granted Plaintiff leave to file the requested motion and set a briefing schedule with the parties. *Id*. ¶ 2.

In her motion, Plaintiff's counsel argues that: (1) Plaintiff acted promptly in notifying the Court and Defendants of his desire to amend; (2) the amended pleading is not futile; (3) the amendments will not require Defendants to expend additional resources in discovery or trial preparation; and (4) granting leave to amend to add the new allegations would serve judicial economy. *See* Memorandum of Law in Support of Motion to Amend Complaint ("Pl.'s Mem.") at 2-6 [DE 54-2].

In opposition, the County Defendants argue that Plaintiff's proposed amendments are futile because no "nexus" exists between the DNA retrieved by the Village Police after the February 2010 Liquor Store Robbery and the DNA used in the June 2013 prosecution of Plaintiff for the 2007 Weberfield Burglary. *See* Memorandum of Law in Opposition to Plaintiff's Motion to Amend His Complaint a Third Time ("County Defs.' Opp.") at 6-7 [DE 59]. Moreover, the County Defendants assert that Plaintiff has set forth no facts that Detective Meese or any other individually named County Defendant was involved in the "allegedly prolonged incarceration" or the prosecution for the 2007 Weberfield Burglary. *Id*. at 7.

Counsel for the Village Defendants also opposes the motion, arguing that the proposed Third Amended Complaint ("TAC") is futile for reasons similar to those raised by the County Defendants. *See* TAC annexed as Ex. "A" to the Declaration of Valerie A. Hawkins in Support of Motion to Amend Complaint ("Hawkins Decl.") [DE 54-3]. Further, the Village Defendants claim that the amendments are an attempt by Plaintiff to "lay the foundation" for a future malicious prosecution claim concerning the Weberfield Burglary. *See* Village Defendants' Memorandum of Law in Opposition ("Village Defs.' Opp.") at 6-9 [DE 56-9]. Finally, the

Freeport Police Officer Defendants argue in their opposition that: (1) the proposed TAC is futile because no contemplated malicious prosecution claim stemming from the 2007 Weberfield Burglary can be asserted against the Village Police Officer Defendants; (2) Plaintiff cannot amend a Notice of Claim in federal court, and, thus, the Supplemental Notice of Claim is deficient; and, in any event, (3) the Supplemental Notice of Claim is a futility. *See* Freeport Police Officer Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Amend ("Freeport Police Officers' Opp.") at 9-13.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 16(b)(4) – "Good Cause"

To the extent that Plaintiff seeks leave to amend the Complaint pursuant to Rule 15(a), he must demonstrate "good cause" since the current motion comes after the deadline to amend pleadings has expired. According to Rule 16(b), the court must enter a scheduling order setting deadlines for subsequent proceedings in the case, including "the time to join other parties [and] amend the pleadings." FED. R. CIV. P. 16(b). "By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *See Parker v. Columbia Pictures Industries*, 204 F.3d at 339-40 (2d Cir. 2000) (internal quotations omitted); *accord Ricciardi v. Kimco Facilities Servs. Corp.*, No. 10 Civ. 5371, 2012 WL 6761533, at *1 (E.D.N.Y. Jun. 12, 2012). In certain cases, however, the Court may determine that a deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Parker*, 204 F.3d at 339 (internal quotations omitted). "In such cases, where the moving party has demonstrated good cause, the court may grant leave to amend the scheduling order to extend the deadline." *Id.*; *see 246 Sears Road Realty Corp. v. Exxon Mobil Corp.*, No. 99 Civ. 889, 2012 WL 4174862, at *9 (E.D.N.Y. Sept.

18, 2012). "[I]n allowing modifications of scheduling orders only for good cause, [Rule 16(b)] provides the district courts discretion to ensure that limits on time to amend pleadings do not result in prejudice or hardship to either side." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243-44 (2d Cir. 2007); *Erdogan v. Nassau County*, No. 10 Civ. 5837, 2014 WL 1236679, at *5 (E.D.N.Y. Mar. 25, 2014).

"Good cause in this context depends on the diligence of the moving party, and, to satisfy the standard, the movant must demonstrate that it is has been diligent in its effort to meet the Court's deadlines." *Sokol Holdings, Inc. v. BMD Munai, Inc.*, No. 05 Civ. 3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) (internal citations and quotations omitted); *see Enzymotec Ltd. V. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2011). "In other words, the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Sokol*, 2009 WL 2524611 at *7 (citing *Rent-A-Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003)); *Erdogan*, 2014 WL 1236679, at *4. In determining whether the good cause standard is met, "the primary consideration is whether the moving party can demonstrate diligence[,]" but that is not the only consideration. *Kassner*, 496 F.3d at 244. "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Id.*; *see Ritchie Risk Limited Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 n.2 (S.D.N.Y. 2012).

**B.**     **Federal Rule of Civil Procedure 15(a) - Motion to Amend**

Once Plaintiff has established "good cause" to modify the scheduling order under

Rule 16(b)(4), Plaintiff must then satisfy the requirements of Rule 15(a) to be granted leave to

amend.  Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party

cannot amend as a matter of course, "a party may amend its pleading only with the opposing

party's written consent or the court's leave."  *Accord Lucente v. Int'l Bus. Machs. Corp.*, 310

F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *Barber v.

Hornbeck Offshore Operators, LLC*, No. 11 Civ. 5520, 2014 WL 1010993, at *5 (E.D.N.Y. Mar.

17, 2014); *M.E.S., Inc. v. Liberty Mut. Sur. Group*, No. 10 Civ. 2798, 2014 WL 46622, at *8

(E.D.N.Y. Jan. 6, 2014).  A court "should freely give leave when justice so requires" and such

leave is in the court's discretion.  *See* FED. R. CIV. P. 15(a); *see also Krupski v. Costa Crociere S.

p. A.*, 130 S.Ct. 2485, 2489 (2010) (Rule 15(a) "gives a district court discretion to decide whether

to grant a motion to amend a pleading before trial."); *Grace v. Rosenstock*, 228 F.3d 40, 56 (2d

Cir. 2000); *MHANY Mgmt. v. County of Nassau*, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012)

(noting that "it is ultimately within the sound discretion of the court whether to grant leave to

amend").

Notwithstanding the foregoing principles, leave to amend may be denied where there is

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, futility of the amendment, etc."  *Williams v. Citigroup Inc.*, 659

F.3d 208, 213-14 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227

(1962)); *SCS Commc'n, Inc. v. Herrick Co.*, 360 F.3d 329, 345 (2d Cir. 2004) ("[U]nder

Rule 15(a), leave to amend a pleading may *only* be given when factors such as undue delay or undue prejudice to the opposing party are absent.") (emphasis in original). "'The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial.'" *Pasternack v. Lab. Corp. of Am.*, 892 F.Supp.2d 540, 529 (S.D.N.Y. 2012) (quoting *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994)); *accord Allstate Ins. Co. v. Elzanaty*, 916 F.Supp.2d 273, 304 (E.D.N.Y. 2013). The opposing party likewise bears the burden of establishing that an amendment would be futile. *See Cummings-Fowler v. Suffolk Community Coll.*, 282 F.R.D. 292, 296 (E.D.N.Y. 2012) (citing *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).

**B.      Federal Rule of Civil Procedure 15(d) - Motion to Supplement Pleadings**

Federal Rule of Civil Procedure 15(d) provides that on motion, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." The same standard for motions to amend under Rule 15(a) applies to motions to supplement under Rule 15(d). *See Salazar v. Bowne Realty Assocs., LLC*, 796 F. Supp. 2d 378, 383 (E.D.N.Y. 2011); *Petrello v. White*, No. 01 Civ. 3082, 2011 WL 4793172, at *4 (E.D.N.Y. Feb. 23, 2011). Supplemental pleadings are "limited to subsequent events related to the claim or defense presented in the original pleading." 3 MOORE FEDERAL PRACTICE § 15.30 (3d ed. 2010); *see Fair Housing in Huntington Committee v. Town of Huntington, N.Y.,* No. 02 Civ. 2787, 2010 WL 4791787, at *7 (E.D.N.Y. Nov. 18, 2010). Significantly, a party seeking to supplement pleadings under Rule 15(d) is not required to demonstrate "good cause" under Rule 16(b)(4) since this latter provision pertains solely to motions to *amend* - - not motions to *supplement* pleadings. *See Watson v. Wright*, No. 08 Civ. 960, 2011 WL 1118608, at *5 (W.D.N.Y. Jan. 11, 2011) *adopted*

*by* 2011 WL 1099981 (W.D.N.Y. Mar 24, 2011) ("Unlike motions to amend . . . Rule 16's plain language does not require courts to set a deadline for filing a motion to supplement and the parties in this case did not set such a deadline in their Scheduling Order.") (internal citation and quotations omitted).

## III.   DISCUSSION

### A.   Good Cause

To the extent that Plaintiff seeks leave to amend under Rule 15(a), the Court finds that Plaintiff has demonstrated "good cause" to modify the scheduling order pursuant to Rule 16(b)(4).  In the present matter, the final deadline to join parties or amend the pleadings expired on March 19, 2012.  *See* Feb. 9, 2012 Electronic Order.  In that Electronic Order, the Court stated that:

> The Court will grant an extension of the deadline for the joinder of parties and amendment of pleadings set forth in the Case Management and Scheduling Order.  If counsel wishes to amend the Complaint, she must do so by stipulation or by formal motion pursuant to the Federal Rules of Civil Procedure. The stipulation or motion is due by March 19, 2012.

*Id*.  Here, Plaintiff's counsel accurately represents that she notified the Court of her intention to amend and file the proposed TAC just two days following Plaintiff's acquittal on the charges stemming from the 2007 Weberfield Burglary.  *See* DE 50.  In her June 19, 2013 letter, Plaintiff's counsel reported that Plaintiff was acquitted by a Nassau County jury on June 17, 2013.  *Id*. at 1.  Furthermore, Plaintiff's counsel specifically cited this Court's January 25, 2013 Order in which the Court denied Plaintiff leave to amend a malicious prosecution claim arising from the Weberfield Burglary since it had not yet been adjudicated.  *Id.;* DE 33 at 46.  The Court reasoned, in light of the pending state prosecution, that any malicious prosecution claim arising from the Weberfield Burglary was not ripe for adjudication.  *See* DE 33 at 46.  However,

following the June 17, 2013 acquittal on these charges, Plaintiff's counsel maintained that "with the termination of the state court proceeding in favor of Mr. Beckett, these claims are now ripe for adjudication." DE 50 at 2.

Approximately one month after Plaintiff filed the June 19, 2013 letter, the Court presided over a Status Conference where a briefing schedule for the motion to amend was established and entered. *See* DE 53 ¶ 2. Plaintiff's counsel ultimately filed her initial moving papers on August 23, 2013. *See* DE 54. In light of the multiple times Plaintiff brought the circumstances of her client's criminal prosecution to the attention of the Court, and considering the diligence of Plaintiff's counsel in advising the Court of her anticipated motion to amend only two days following her client's acquittal, the Court finds that Plaintiff has demonstrated good cause warranting the modification of the March 19, 2012 deadline to amend pleadings. *See Sokol*, 2009 WL 2524611 at *7 (citing *Rent-A-Center Inc.*, 215 F.R.D. at 104); *Erdogan*, 2014 WL 1236679, at *7 (finding that "the applicable deadline could not have reasonably been met and Plaintiff acted with diligence under Rule 16(b)").

### B. Undue Delay and Prejudice

Preliminarily, the Court points out that Plaintiff's motion papers do not clearly articulate whether the instant motion is brought solely under Rule 15(a) or pursuant to both Rule 15(a) and 15(d). For example, Plaintiff's counsel refers to the "new causes of action" and, at the same time, asks for leave "to allege the facts that have transpired since" the filing of the SAC to "develop his claims." *See* Pl.'s Mem. at 3; *see also* Plaintiff's Reply Memorandum of Law in Support of Motion to Amend Complaint ("Pl.'s Reply Mem.") at 5. According to counsel, Plaintiff "has not advanced any malicious prosecution or retaliation claims against any of the defendants" but rather "seeks to set forth the transactions, occurrences, and events that happened

after he filed his second amended complaint in this action." Pl.'s Reply Mem. at 2-3. However, in her June 19, 2013 letter, Plaintiff's counsel states that she seeks to amend the action "to allege that the unlawful and malicious acts and/or omissions of the defendants resulted in the said state court prosecution" for the Weberfield Burglary. DE 50 at 1. Despite the seeming dissonance of these representations, it appears that Plaintiff is seeking leave under Rule 15(a) to assert a malicious prosecution claim arising out of the Weberfield Burglary *and* to supplement the pleading under Rule 15(d) with facts that arose after the February 8, 2013 SAC was filed. As such, the Court will construe the motion under both Rule 15(a) and Rule 15(d).

Since courts apply the same factors when assessing motions to amend under Rule 15(a) and motions to supplement under Rule 15(d), the Court will simultaneously analyze whether Plaintiff should be granted leave to amend under these provisions. *See Riverhead Park Corp. v. Cardinale*, 881 F. Supp. 2d 376, 379 (E.D.N.Y. 2012) ("Where, as here, the Plaintiffs seek to add related claims against the same defendants, the analysis under Rule 15(a) and Rule 15(d) is the same.") (internal citations omitted). "A court should deny leave to amend or to serve a supplemental pleading only upon undue delay, bad faith or dilatory motive on the part of the [moving party], . . . undue prejudice to the [nonmoving party,] . . . [or] futility." *Cummings-Fowler*, 282 F.R.D. at 296 (internal citations and quotations omitted); *Williams*, 659 F.3d at 213-14. "The party opposing the motion bears the burden of establishing that an amendment would be prejudicial or futile." *Cummings-Fowler*, 282 F.R.D. at 296 (internal citation omitted). "Ultimately, it is within the sound discretion of the court whether to grant leave to amend." *Id.* (internal citation and quotations omitted).

Here, the Court finds no undue delay in the filing of Plaintiff's motion for leave to amend the pleading a third time. The claims and events sought to be added in the proposed TAC had

not yet occurred and were not yet cognizable at the time the SAC was filed on February 8, 2013. *See* TAC. The steadfastness of Plaintiff's counsel in pursuing civil rights claims originating from the Weberfield Burglary is borne out by her multiple attempts at amending the pleading. In its January 25, 2013 Order, this Court held that any malicious prosecution claim arising out of the 2007 Weberfield Burglary was not yet ripe for review because that criminal matter was still pending in state court. *See* DE 33 at 46. As soon as those charges were terminated on June 17, 2013, Plaintiff's counsel wasted no time notifying the Court of those developments and renewing her request to amend the SAC in her letter of June 19, 2013. DE 50. Given this timeline, the Court finds that Plaintiff did not unduly delay bringing the instant motion.

However, the Court disagrees with Plaintiff's representation that "[t]his action remains in its early stages" and, as such, will not unduly prejudice the Defendants. *See* Pl.'s Mem. at 5-6. Judge Wexler has twice placed the parties on notice of jury selection in this action. First, on July 31, 2013, the parties were advised that jury selection was set for June 2, 2014. *See* Jul. 31, 2013 Electronic Order. Again, on January 28, 2014, Judge Wexler reminded the parties that the new jury selection date of June 2, 2014 remained in effect and there would be no adjournments. *See* Jan. 28, 2014 Electronic Order. As acknowledged by Plaintiff's counsel,

> [t]his matter was scheduled for jury selection on June 10, 2013; however, jury selection did not commence as Beckett was actually engaged in jury selection and trial in the Nassau County Court on the aforementioned burglary and petite (*sic*) larceny charges against him.

Hawkins Decl. ¶ 22; *see also* DE 53 ¶ 3.

The Court also points out that discovery was closed on September 28, 2012, when Judge Wexler originally marked this case ready for trial. *See* DE 32. Plaintiff's counsel alludes to a possible fourth amended pleading (potentially adding a claim of malicious prosecution arising

from the burglary acquittal) which would undoubtedly delay the resolution of this action further in contravention of Judge Wexler's directives. As the County Defendants argue, Plaintiff's supplemental pleading "foreshadows a future request – a fourth amended complaint - - to add new claims (malicious prosecution)" at this late stage of the litigation. County Defs.' Opp. at 5-6. The Freeport Police Officer Defendants submit that Plaintiff's instant motion is prejudicial to them on grounds similar to those asserted by the County Defendants. *See* Freeport Police Officers' Opp. at 9. The Freeport Police Officers argue that the TAC constitutes "nothing more than an attempt to 're-start' the case to obtain long waived discovery." *Id*. According to Plaintiff's counsel, Defendants will not be required to "expend additional resources to conduct discovery and prepare for trial and would not significantly delay the resolution of this dispute." Pl.'s Mem. at 5-6. However, this conclusory statement is not reflective of the facts presently before the Court. As set forth by counsel, Plaintiff "should be permitted to amend and supplement his complaint to allege the facts that have transpired since he filed his second amended complaint" and he should further "***be permitted to complete discovery to develop his claims against the defendants***." Pl.'s Reply Mem. at 5 (emphasis added). As gleaned from the declarations of Plaintiff's counsel, discovery does, in fact, remain to be completed in this action. *See* Hawkins Decl. ¶¶ 23-24. Plaintiff's counsel points out that:

> 23. The original parties in this action, Beckett and the Village defendants, have served and responded to interrogatories and document requests. The Village defendants deposed Beckett on April 9 and 10, 2013. Counsel for the County defendants was present at the deposition.
>
> 24. Beckett and the County defendants have served interrogatories and document requests; however, they have not been responded to the same.

*Id.* Given that discovery is concededly incomplete with respect to the current claims, permitting a further amendment to allow Plaintiff to explore allegations of malicious prosecution concerning the Weberfield Burglary will substantially extend the time this matter is litigated. Moreover, the 2007 Weberfield Burglary concerns a completely different incident from the one at issue in this litigation - - the 2010 Liquor Store Robbery. As such, the Court finds that granting leave for a third time would, contrary to counsel's assertions, "significantly delay" resolution of this action.

Finally, the Court notes that finding the TAC prejudicial does not foreclose Plaintiff's ability to bring a separate lawsuit in connection with the Weberfield Burglary. Plaintiff, in conjunction with the instant pleading, filed a Second Supplemental Notice of Claim, dated September 13, 2013, which included, *inter alia*, a claim of malicious prosecution against all Defendants. *See* Second Supplemental Notice of Claim annexed to the Declaration of Deputy County Attorney Liora Ben-Sorek, Esq. ("Ben-Sorek Decl.") as Ex. "D" [DE 58-4]. In its January 25, 2013 Order, the Court found Plaintiff's filing of the Supplemental Notice of Claim appropriate. DE 33 at 17. Here, too, the Court finds that the filing of the Second Supplemental Notice of Claim was appropriate. As previously explained by this Court, "several courts, without directly addressing the issue, have permitted plaintiffs to serve additional notices of claim which include facts that developed after the original notice was filed." DE 33 at 17 (citing *Rotundo v. Vill. of Yorkville*, No. 09 Civ. 1262, 2011 WL 838892, at *3 (N.D.N.Y. March 4, 2011); *Rivera v. Comm. Sch. Dist. Nine*, No. 00 Civ. 8208, 2002 WL 1461407, at *2 (S.D.N.Y .July 8, 2002); *Blue Water Envtl., Inc. v. Inc. Vill. of Bayville, New York*, 12 Misc. 3d 1169(A), 820 N.Y.S.2d 841 (N.Y. Sup. Ct. Nassau Co. 2006)). Since Plaintiff filed the Second Supplemental Notice of Claim within the ninety day statute of limitations set forth in General

Municipal Law § 50-e(1), Plaintiff is not precluded from bringing an independent action for malicious prosecution arising out of the June 17, 2013 acquittal on the Weberfield Burglary charges.

**C.    Whether Supplemental Facts in the TAC Connect to the SAC Under Rule 15(d)**

Plaintiff contends that the proposed TAC would "buttress judicial economy."  Pl.'s Mem. at 6 (citing *State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04 Civ. 2609, 2007 WL 7704666 (E.D.N.Y. May 22, 2007)).  As a general matter, Rule 15(d) "reflects a liberal policy favoring a merit-based resolution of the entire controversy between the parties." *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008) (internal quotation marks and citations omitted); Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).  However, this "liberal policy" under Rule 15(d) is predicated on whether "the supplemental facts connect [the supplemental pleading] to the original." *Id.*  (internal citations and quotations omitted).  Here, the central dispute is whether the 2007 Weberfield Burglary is connected to the 2010 Liquor Store Robbery for which this case was originally brought.  Under Rule 15(d), "[t]he threshold consideration for the district court is whether the supplemental facts connect [the supplemental pleading] to the original pleading." *Fair Housing in Huntington Committee*, 2010 WL 4791787, at *9 (internal citation and quotations omitted); *LaBarbera v. Audax Const. Corp.*, No. 02 Civ. 582, --- F.Supp.2d ----, 2013 WL 5295493, at *8 (E.D.N.Y. 2013) ("Rule 15(d) allows a party to supplement the complaint in order to present subsequent material that is related to the claims presented in the original complaint.").  "If there is a relationship, then leave to supplement should be freely permitted absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Fair Housing in Huntington Committee*, 2010 WL 4791787, at *9 (internal citation and quotations omitted).

18

The Court finds that Plaintiff has failed to meet the threshold requirement establishing a connection between the claims in the operative pleading (SAC) and the new facts asserted in the proposed supplemental pleading (TAC) concerning the Weberfield Burglary.  The County Defendants argue that "Plaintiff's proposed amendment[] attempts to link the DNA recovered at [Freeport Police Department] on February 6, 2010 with his continued incarceration on burglary charges (until July 2012) and the prosecution on those burglary charges which were resolved in June 2013."  County Defs.' Opp. at 6.  The County Defendants maintain that "neither Beckett's 2011 indictment on charges of burglary (stemming from a 2007 crime), nor his June 2013 trial were based at all upon the DNA retrieved at [Freeport Police Department] in February 2010." *Id*. at 7.  In support of this position, the County Defendants have annexed the Affidavit of Assistant District Attorney Anthony Perri ("ADA Perri") to the Declaration of Deputy County Attorney Liora Ben-Sorek, Esq. filed in support of their opposition to Plaintiff's motion.  *See* Ben-Sorek Decl., Ex. "E" ("Perri Aff.").  ADA Perri explains that:

> 2.  In June 2013, I was assigned to prosecute the case captioned: *People of the State of New York v. Leonard Beckett*; Indictment # 376N-12, in which the defendant was charged with having committed burglary in the second degree in violation of New York State Penal Law § 140.25(2).
>
> 3.   The burglary at issue occurred on February 14, 2007 in Freeport, County of Nassau, State of New York.
>
> 4.  The DNA left at the burglary scene was compared with a buccal sample taken from defendant Beckett, which he was required to give as a result of a prior conviction for endangering the welfare of a minor from May 16, 2003.  Beckett's indictment on the burglary charge was, in part, based upon a comparison of those samples. The forensic evidence left at the crime scene and DNA obtained from the aforementioned mandatory buccal swabbing were the only DNA evidence utilized in connection with Beckett's indictment.

> 5.  On or about February 27, 2013, another buccal swab was taken from Beckett pursuant to a discovery order signed by Acting New York Supreme Court Justice Hon. Alan L. Honorof under New York State Criminal Procedure Law § 240.40. The February 27, 2013 buccal sample also matched the same DNA previously analyzed from the burglary scene.
>
> 6.  Trial on the burglary charge was conducted in June 2013. The only DNA evidence presented during the trial was from the buccal sample taken in February 2013 and that which was recovered from the scene of the 2007 burglary.

*Id.* ¶¶ 2-6. Given this record, the County Defendants submit that "there is no nexus between the Defendants in this case and the actions sought to be alleged in the new pleading." County Defs.' Opp. at 7.

Similarly, the Village Defendants refer to ADA Perri's affidavit and argue that "the indictment of the plaintiff for that [Weberfield] burglary that resulted in his acquittal was based in part upon comparison of DNA that was left at the scene of the 2007 burglary in Freeport, New York with DNA obtained from the plaintiff from a buccal swab sample that plaintiff was required to give the Nassau County District Attorney as a result of his prior conviction in 2003 for endangering the welfare of a minor." Village Defs.' Opp. at 7. As such, the Village Defendants contend, the "DNA left at the scene of the burglary in 2007 was not obtained from his blood obtained on February 6, 2010 after his arrest for the robbery committed at the Freeport Wine & Liquor Store." *Id.* at 8. The Freeport Police Officer Defendants likewise state "it is undisputed that plaintiff's DNA from the 2010 robbery was not used in connection with plaintiff's prosecution for the 2007 burglary." Freeport Police Officers' Opp. at 11.

In reply, Plaintiff argues that the "illegally obtained evidence was the foundation for both the 2010 robbery charges and the 2011 burglary charges against which Beckett had to defend himself." *See* Reply Declaration of Valerie A. Hawkins, Esq. in Support of Motion to Amend

Complaint ("Hawkins Reply Decl."). In tying these two charges together, Plaintiff attempts to develop linkage between the SAC and the TAC which is necessary to add new allegations in a supplemental pleading under Rule 15(d). Citing a March 9, 2010 internal Nassau County Police Department memorandum from Sergeant Michael Cole of the Forensic Evidence Bureau to Defendant Meese, Plaintiff contends that Defendant Meese was "informed of a match between Beckett's DNA and the DNA found at the scene of the alleged robbery." Hawkins Reply Decl., Ex. "A." In that March 9, 2010 memorandum, submitted for the first time in reply, Sergeant Cole wrote that:

> The evidence submitted to the **Forensic Evidence Bureau** for **DNA** analysis (10CR0010747, L10000698, )defendants gloves, jacket, cup and victims buccal swab kit have been accepted by the **Medical Examiner / Department of Forensic Genetics** for <u>immediate</u> analysis. The evidence has been transferred to the **ME/DoFG**. Should you need clarification or have any questions please, contact the Evidence Assessment Section at Ext. 7800.

*Id.* (emphasis in original). In citing this inter-departmental memorandum, Plaintiff concludes that the County Defendants had custody of the evidence secured from the 2010 Liquor Store Robbery arrest and later matched it with the earlier 2007 Weberfield Burglary. Hawkins Reply Decl. ¶ 5. Plaintiff submits that the County Defendants were "informed of a match between Beckett's DNA found at the scene of the alleged 2007 burglary" on May 28, 2010 as reflected in Detective Buokowski's case notes for the Office of the Medical Examiner. Pl.'s Reply. at 3; *see* Nassau County Office of the Medical Examiner Dep't of Forensic Genetics Case Contact Form, annexed as Exhibit "B" ("Forensic Notes") to the Hawkins Reply Decl. [DE 61-3]. As such, the assertion that "the illegal arrest by Beckett by the defendants had nothing to do with the 2011 burglary prosecution is false." Pl.'s Reply at 3. The inter-departmental memorandum and Forensic Notes are particularly troubling, according to Plaintiff's counsel, because all evidence

from the pursuit and seizure of Plaintiff's person following the 2010 Liquor Store Robbery were declared unlawful by the Appellate Division in *Beckett*, 88 A.D. 3d at 931, by the time Plaintiff's burglary trial commenced in 2013.  Hawkins Reply Decl. ¶ 4.  As such, the DNA sample, which Plaintiff claims was seized during the February 2010 arrest, also lays the foundation for his motion to supplement and, counsel argues, the Court should allow Plaintiff to "develop his claims against the defendants."  Pl.'s Reply Mem. at 5.

Based on a review of the record, the Court is not persuaded by Plaintiff's conclusion that the Weberfield Burglary is connected to the claims in the SAC for purposes of amending under Rule 15(d).   Although Plaintiff's counsel refers to the evidentiary decision of Justice Honorof which was issued on June 22, 2012 in connection with the Weberfield Burglary prosecution, counsel neglects to cite a critical segment of that decision, specifically, that the court denied Plaintiff's motion to suppress DNA evidence.  *See* Hawkins Reply Decl., Ex. "C."  The issue before Justice Honorof was not unlike the one currently before the Court, namely, whether the DNA used by the prosecution against the Plaintiff on the Weberfield Burglary constituted the same sample that was suppressed by the Appellate Division.  *Id*. at 1.  In the Weberfield Burglary prosecution, Plaintiff moved to suppress the DNA as "fruit of the poisonous tree" whereas the state argued that "the DNA to which the DNA in this case was matched was not the DNA obtained which was ultimately suppressed, but rather came from the defendant's 'convicted defendant specimen', lawfully taken and maintained by the New York State DNA Index System after plea in that matter."  *Id*. (internal citation omitted).  However, Justice Honorof held that

> [t]he defendant's motion to suppress the instant DNA evidence is denied.  Though the DNA in the initial robbery case was illegally obtained, the defendant's subsequent plea and the DNA sample was legally obtained pursuant to a voluntary plea.

> As the Second Department held in <u>People v. King</u>, 232 AD3d 111,
> 117 "once a person's blood sample has been obtained lawfully, he
> can no longer assert either privacy claims or unreasonable search
> and seizure arguments with respect to use of that sample", lv
> denied 91 NY3d 875 (1997).

*Id*. The County Defendants asserted in their opposition papers that "[a]s part of pre-trial

discovery in the burglary prosecution, Nassau County Acting Supreme Court Justice Hon. Alan

Honorof ordered Beckett to provide a buccal sample." County Defs.' Opp. at 4. As referenced

in the County defendants' opposition and in the affidavit of ADA Perri, "[t]hat sample was taken

on or about February 27, 2013 and matched the DNA found at the burglary scene." *Id*. In

contrast to the arguments set forth by the Defendants, Plaintiff has set forth only conclusory,

circular arguments proffering that the DNA sample used by the state to prosecute the Weberfield

Burglary was unlawfully obtained. Moreover, as seen above, Plaintiff's contentions are

predicated on an incomplete recitation of the facts from the underlying burglary proceeding.

Given this record, the Court finds that the facts to be added in Plaintiff's supplemental pleading

are not connected to the civil rights claims stemming from the 2010 Liquor Store Robbery.

This case is distinguishable from *Witkowich*, 541 F. Supp. 2d at 590, where, for example,

the court *sua sponte* granted plaintiffs leave to supplement a retaliation claim pursuant to

Rule 15(d) because plaintiff's new allegations in opposing defendants' summary judgment

motion were "closely related to those raised" in the pleading. The court reasoned that the

supplemental allegations involved the "same subject matter," "many of the same people," and

events which took place around the same time as the original discrimination claim. *Witkowich*,

541 F. Supp. 2d at 590. By contrast here, the series of events Plaintiff seeks to bring within the

supplemented pleading (1) arise from totally different charges, (2) took place three years prior to

the 2010 Liquor Store Robbery at issue, (3) involve different parties, and, (4) unlike the

interconnectedness of a discrimination and retaliation claim, are not closely related but rather, represent two entirely different transactions.

Similarly, the facts in the present matter are dissimilar to those presented to the court in *Alexandre v. Town of Hempstead*, 275 F.R.D. 94, 98 (E.D.N.Y. 2011) in which plaintiff's motion to supplement was granted pursuant to Rule 15(d). There, the plaintiff did not seek to add any new causes of action, but rather to add further facts to his original cause of action. As a result, the court found that only limited additional discovery would be necessary. *Alexandre*, 275 F.R.D. at 98; *see also Andino v. Fischer*, 698 F. Supp. 2d 362, 374 (S.D.N.Y. 2010) (denying motion to supplement under Rule 15(d)). Here, by contrast, the Plaintiff is admittedly using the unrelated acquittal of charges from the Weberfield Burglary to explore a potential new claim, not yet realized, against the Defendants. Unlike *Alexandre* and *Andino*, Plaintiff does not show how the contemplated malicious prosecution claim stemming from the Weberfield Burglary would connect to the original claims such that there is no undue prejudice or delay in the resolution of this action.

### D. Futility

Assuming Plaintiff also seeks to set forth a new claim of malicious prosecution, the Court must assess whether that new cause of action would be a futility under Rule 15(a). In addition to causing undue prejudice, the Court finds that the purported new claim, namely, malicious prosecution for the Weberfield Burglary, fails to state a plausible claim upon which relief can be granted. "An amendment is futile if the claim would be unable to withstand a Rule 12(b)(6) motion to dismiss…and the court applies the same analysis in determining futility as it does in deciding Rule 12(b)(6) motions." *Wade v. Rosenthal*, No. 11 Civ. 5672, 2012 WL 3764291, at *1 (E.D.N.Y. Aug. 29, 2012) (internal citations and quotations omitted). "As a result, mere

labels, conclusions, and a 'formulaic recitation of the elements of a cause of action' do not suffice to state a plausible claim." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,555 (2007)). All Defendants in this action contend that any putative malicious prosecution claim originating from the burglary charges would be unsustainable. The County Defendants argue the general principle that a plaintiff must allege personal involvement of a defendant in a Section 1983 lawsuit. County Defs.' Opp. at 7. Here, the County Defendants maintain, "Plaintiff makes no direct allegation that Detective Meese or any of the other individual defendants caused Plaintiff's allegedly prolonged incarceration or was in any way involved in the prosecution against him of the burglary charges." *Id.*

The Freeport Police Officer Defendants contend that, as an initial matter, Plaintiff's counsel concedes that no new claim is being asserted in the TAC. Freeport Police Officers' Opp. at 9. As such, they argue that Plaintiff's counsel has "chosen to waste the time of the defendants and this court with the instant motion." *Id.* Assuming that Plaintiff *is* setting forth such a claim, the Freeport Police Officer Defendants assert that any such malicious prosecution claim would be futile against them because they "undisputedly had no role in commencing or continuing the prosecution of plaintiff in connection with the 2007 burglary." *Id.* at 10. Further, the Freeport Police Officer Defendants submit that Plaintiff cannot establish the "requisite element of malice" necessary to set forth a *prima facie* malicious prosecution claim against any of the Defendants. *Id.*

The Village Defendants likewise oppose the motion, arguing that a malicious prosecution claim associated with the Weberfield Burglary is futile because (1) contrary to Plaintiff, the DNA evidence used in the burglary trial was not unlawfully obtained, and (2) Plaintiff's counsel

acknowledged at trial that the blood obtained at the scene of the burglary was, concededly, from the Plaintiff.  Village Defs.' Opp. at 7-8.

A claim for malicious prosecution under New York law requires the plaintiff to prove: (1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) the termination of the proceeding in the plaintiff's favor; (3) a lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's action.  *Anilao*, 774 F. Supp. 2d at 504.  "The absence of probable cause is, therefore, 'an essential element of a claim for malicious prosecution.'"  *Perez v. City of New York*, No. 01 Civ. 5384, 2007 WL 14486, at *11 (E.D.N.Y. 2007) (quoting *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006)); *Gem Financial Service, Inc. v. City of New York*, No. 13 Civ. 1686, 2014 WL 1010408, at *9 (E.D.N.Y. Mar. 17, 2014) (listing the elements of a *prima facie* malicious prosecution claim).  Furthermore, "[a]n indictment by a grand jury creates a presumption of probable cause."  *Perez*, 2007 WL 14486, at *11.  "The presumption may be overcome only by evidence establishing that the [defendants] have not made a complete and full statement of facts either to the Grand Jury or to the [prosecutor], that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith . . . ."  *Colon v. City of New York*, 60 N.Y.2d 78, 82-83, 468 N.Y.S.2d 453 (1983); *accord Faison v. Maccarone*, No. 11 Civ. 137, 2012 WL 681812, at *7 n.11 (E.D.N.Y. Mar. 1, 2012) (holding that a plaintiff may only overcome the presumption by establishing that the indictment was procured by fraud, perjury, suppression of evidence or other police conduct undertaken in bad faith); *Perez*, 2007 WL 14486, at *11.  A plaintiff must allege specific facts that rebut the presumption of probable cause which arises from a grand jury indictment.  *Rhodes v. Tevens*, No. 07 Civ. 471S, 2012 WL 777421, at *9 (W.D.N.Y. Mar. 7, 2012).

Here, to the extent that Plaintiff is attempting to set forth a malicious prosecution claim arising out of the Weberfield Burglary, the claim is not plausible. Preliminarily, the Court notes that such a claim suffers from some of the same infirmities identified in Plaintiff's assertion of a malicious prosecution claim stemming from the 2010 Liquor Store Robbery. As explained in the Court's January 25, 2013 Order:

> The [Proposed SAC] alleges that "[o]n May 5, 2010, a Nassau County grand jury handed down an indictment that charged Beckett" with various counts of robbery, assault, criminal possession of a weapon, and resisting arrest. Therefore, a presumption arises that Defendants acted with probable cause and Plaintiff must allege wrongdoing by the Defendants with respect to the grand jury proceedings. Plaintiff has not done so. Thus, the claim is unsustainable.
>
> Notably, the Liquor Store Robbery malicious prosecution claim would also be subject to dismissal on other grounds. First, Plaintiff does not allege which Defendants were responsible for initiating or continuing the criminal prosecution. Nor does Plaintiff plead malice, which requires allegations of wrong or improper motive.

DE 33 at 45-46 (internal citations omitted). The Court finds that any putative malicious prosecution claim originating from the Weberfield Burglary is similarly deficient. In her proposed TAC, Plaintiff has not clearly set forth which of the defendants she seeks to recover against under a theory of malicious prosecution for the Weberfield Burglary. Moreover, Plaintiff has again failed to plead any facts which show a lack of probable cause or actual malice. As described in the affidavit of ADA Perri, the Weberfield Burglary prosecution was initiated pursuant to Indictment # 376N-12 in the *People of the State of New York v. Leonard Beckett*, charging Plaintiff with burglary in the second degree in violation of New York State Penal Law § 140.25(2). *See* Ben-Sorek Decl., Ex. "E" ¶ 2. Plaintiff has not rebutted the "presumption of probable cause" created by this grand jury indictment and, as such, fails to state a claim for relief

that is plausible on its face. *See Hendrix v. City of New York*, No. 12 Civ. 5011, 2013 WL 6835168, at *8 (E.D.N.Y. Dec. 20, 2013) (quoting *Twombly*, 550 U.S. at 547); *Brown v. City of New York*, No. 08 Civ. 5095, 2013 WL 5329356, at *1 (E.D.N.Y. Sept. 20, 2013) ("A grand jury indictment creates a rebuttable presumption of probable cause, which is fatal to a claim of malicious prosecution.") (citing *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir. 2003)).

As noted above, Plaintiff cannot show that "his indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Hendrix*, 2013 WL 6835168, at *8. Plaintiff's attempt to link the unlawfully seized DNA evidence from the 2010 Liquor Store Robbery with the 2007 Weberfield Burglary prosecution is mere conjecture unsupported by a plausible basis in fact. The DNA sample left at the scene of the 2007 Weberfield Burglary was compared with a buccal sample taken from the Plaintiff as a result of prior conviction for endangering the welfare of a minor. *See Ben Sorek Decl.*, Ex. "E" ¶ 4. As ADA Perri noted, Plaintiff's indictment on the Weberfield Burglary charges was "in part" predicated upon a comparison of the foregoing two DNA samples. *Id.* These were the only two items used in connection with Plaintiff's indictment.

Moreover, in addition to the lack of probable cause, Plaintiff fails to show any malice by any of the Defendants. Actual malice under New York law "means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Stansbury v. Wertman*, No. 09 Civ. 4638, 2012 WL 183849, at *8 (S.D.N.Y. Jan. 24, 2012) (quoting *Rounseville v. Zahl,* 13 F.3d 625, 630 (2d Cir. 1994)). "However, it is also the case that 'New York courts recognize that actual malice can rarely be established through direct evidence and thus may be proven though circumstantial evidence.'" *Id.* (quoting *Rounseville,* 13 F.3d at 630). "Further, New York law considers the

lack of probable cause and the presence of malice closely related," *Rounseville,* 13 F.3d at 631, and "[a] lack of probable cause generally creates an inference of malice." *Id.* at *9 (citing *Boyd v. City of New York,* 336 F.3d 72, 78 (2d Cir.2003); *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir.1996)). Here, the Court finds that Plaintiff has not set forth any facts in the TAC to suggest that any of the Defendants were motivated by actual malice. This conclusion is further supported by the lack of probable cause reflected in the TAC. The prosecution of the Weberfield Burglary was based on a lawful indictment. Moreover, a buccal swab of Plaintiff's DNA evidence was ordered to be produced in pre-trial discovery by a state court judge, the results of which confirmed a match with the specimen recovered at the Weberfield Burglary.

Finally, the Court notes that, although not pleaded in the TAC, Plaintiff has again set forth state law causes of action for intentional infliction of emotional distress, negligence, false arrest, false imprisonment, assault, battery, and *prima facie* tort in the Second Supplemental Notice of Claim. *See* Ben-Sorek Decl., Ex. "D" ¶ 18. To the extent Plaintiff attempts to re-plead these allegations, the Court reminds Plaintiff of its decision in the Order of January 25, 2013 finding these claims futile. DE 33 at 18-19. As such, any of the foregoing putative state law claims would also constitute a futility.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court DENIES Plaintiff's motion to amend the Complaint for a third time. The parties are directed to appear for an in-person status conference before this Court on April 24, 2014 at 12 p.m.

**SO ORDERED.**

Dated:  Central Islip, New York
        March 31, 2014


                                    /s/ A. Kathleen Tomlinson
                                    A. KATHLEEN TOMLINSON
                                    United States Magistrate Judge